**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No. 1:13-cr-00354-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JOEL E. MILLER,

      Defendant.

---

## ORDER DENYING MOTION FOR NEW TRIAL

---

**Blackburn, J.**

This matter is before me on the **Motion for New Trial** [#476][1] filed November 23,

2015.  The government filed a response [#494], and the defendant filed a reply [#511].

I deny the motion.

## I. BACKGROUND

On November 9, 2015, the defendant, Dr. Joel Miller, was found guilty of Counts

20, 23, 24, 27, 28, 31, 32, and 35 of the Superseding Indictment [#216] (indictment)

filed February 24, 2015.  At all times relevant to the indictment, Dr. Miller was a licensed

physician and was practicing medicine in Craig, Colorado.  The indictment concerns

actions and omissions of the defendant as a practicing physician.  Counts 20, 23, 24,

27, 28, 31, and 32 all charge unlawful distribution of controlled substances by Dr. Miller.

Conviction on each of those counts requires proof beyond a reasonable doubt that Dr.

---

[1]  "[#476]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

Miller distributed one or more controlled substances on particular occasion to a particular patient without a legitimate medical purpose or did so then acting outside the usual course of professional practice.  Each of these counts concerned prescriptions given by Dr. Miller to particular patients on particular dates.[2]

## II.  STANDARD OF REVIEW

The standard for granting a new trial in a criminal case is set forth in Fed. R. Crim. P. 33, which provides that a new trial may be granted "if the interest of justice so requires."  FED. R. CRIM. P. 33(a).  In considering the motion, the court presumes that the verdict is valid, and the defendant bears the burden of demonstrating that a new trial is warranted.  3 C. WRIGHT, A. LEIPOLD, P. HENNING & S. WELLING, **Federal Practice & Procedure** § 581 (4th ed. 2011).  The submission to the jury of improper instructions may form the basis of a motion for new trial.  **See United States v. Guthrie**, 814 F. Supp. 942, 946 (E.D. Wash. 1993), **aff'd**,. 17 F.3d 397 (9th Cir. 1994).  Nevertheless, "a motion for a new trial is not regarded with  favor and is only issued with great caution."  **United States v. Herrera**, 481 F.3d 1266, 1269-70 (10th Cir. 2007).  **See also United States v. Perry**, 335 F.3d 316, 320 (4th Cir. 2003) ("[A] court should exercise its discretion to grant a new trial sparingly, and . . . should do so only when the evidence weighs heavily against the verdict.") (citation and internal quotation marks omitted).

## III.  ANALYSIS

Dr. Miller asserts two bases in support of his motion for a new trial.  First, he again challenges the testimony of a government expert witness, Dr. Theodore Parran.

---

[2] In a separate order addressing a different issue, I have granted the **Defendant's First Post-Trial Motion for Judgment of Acquittal on Count 24** [#473] filed November 20, 2015.  Thus, in this order, I do not address Count 24 directly.

At trial, Dr. Parran testified about each patient involved in the counts listed above, the prescribing practices of Dr. Miller concerning these patients, and the particular prescriptions at issue in each count for each patient.  In addition, Dr. Parran testified about the standards applicable to a physician treating patients who seek pain relief and the prescription of the controlled substances at issue in Counts 20, 23, 27, 28, 31, and 32.

Dr. Parran, and other expert witnesses, testified that the prescriptions issued by Dr. Miller as alleged in Counts 20, 23, 27, 28, 31, and 32, were issued without a legitimate medical purpose.  He testified also that each of these prescriptions was issued outside the usual course of professional practice.  Dr. Miller contends these opinions were "unhinged from recognized scientific medical principles" and, therefore, are not a proper basis for his conviction on Counts 20, 23, 27, 28, 31, and 32. *Motion* [#476], p. 4.

Second, Dr Miller contends the "jury was not adequately informed as to the law" because it was not given definitions of the terms "legitimate medical purpose" and "outside the usual course of professional practice."  Absent a definition of these terms, Dr. Miller contends, the jury was left to reach a decision without guidance as to the meaning of these key terms.

In the end, Dr. Miller asserts, the expert testimony presented at trial and the instructions given to the jury failed to define "the line between medical malpractice and criminal conduct."  *Reply* [#511], p. 2.  The purported lack of such a definition, Dr. Miller contends, requires a new trial.  I disagree.

Without objection by the defendant, the court accepted the proffer of expertise of Dr. Parran, who was then qualified as an expert in pain management, addiction, and

internal medicine. As Dr. Miller concedes, Dr. Parran "eloquently described such concepts as dependence, drug-seeking behavior, addiction, medical history and physical records, progress notes, charting, and other medical concepts." *Motion* [#476], p. 3. These concepts and others detailed by Dr. Parran and other experts who testified at trial are the principles Dr. Parran applied to the facts of this case.  Dr. Parran and several other expert witnesses testified about what it means for a doctor to prescribe controlled drugs for legitimate medical purposes and within the usual course of professional medical practice.  Dr. Parran also described why the particular prescriptions at issue in Counts 20, 23, 27, 28, 31, and 32 were not issued for a legitimate medical purpose and were not prescribed within the usual course of professional practice.  The principles expressed by Dr. Parran and the other expert witnesses were described to the jury in detail, and the evidence showed these principles are well-founded in recognized medical principles.  These principles are not, as Dr. Miller claims, "unhinged from recognized scientific medical principles." *Motion* [#476], p. 4.

Of course, the statute under which Dr. Miller was charged in Counts 20, 23, 27, 28, 31, and 32, together with the related and corresponding regulations, defines the criminal conduct with which Dr. Miller was charged and now stands convicted.  That statute is 21 U.S.C. § 841(a)(1), (b)(1)(E), & (b)(2).  The related regulation found at C.F.R. § 1306.04 also informs the definition of the criminal conduct at issue.  The jury instructions [#466] provided a detailed definition of these crimes as applied to the charges against Dr. Miller.  That definition of the criminal conduct in question in this case is adequate.

In the jury instructions, the court did not define the terms "legitimate medical purpose" and "outside the usual course of professional medical practice." The United States Court of Appeals for the Tenth Circuit and other courts explicitly discourage courts from defining these terms. ***U.S. v. Lovern***, 590 F.3d 1095, 1100 (10th Cir. 2009). In ***Lovern***, the court noted that the government sought to establish that the conduct of the defendant physicians "was inconsistent with the usual course of professional practice the old-fashioned way: through witnesses and documentary proof at trial focused on the contemporary norms of the medical profession." *Id*. The same was true in the trial of Dr. Miller. As noted by the ***Lovern*** court, government attempts to define unilaterally what practices may be without a legitimate medical purpose or fall outside the scope of professional practice are fraught with peril. *Id*. In criminal trials where those concepts are at issue, it is best "to leave that question where it has been for over 30 years – with the jury." *Id*. (internal quotation and citation omitted). That is precisely what occurred in the trial of Dr. Miller.

Given the quantity and quality of the evidence presented at trial, the fact that the jury was left to make these determinations is proper. It is noteworthy that the jury applied these standards to 15 separate counts in the indictment, Counts 20 - 34. Each of these counts alleged unlawful distribution of one or more controlled substances to a particular patient on a particular date. Each count required the jury to determine if the controlled substance or substances at issue were prescribed by Dr. Miller without a "legitimate medical purpose" or were "outside the usual course of professional medical practice." The jury found Dr. Miller guilty on Counts 20, 23, 24, 27, 28, 31, and 32, and not guilty on counts 21, 22, 25, 29, 30, 33, and 34. The jury applied these concepts and parsed them as to each patient and each prescription at issue.

Given the evidence at trial and the related instructions of the court, there is no basis in fact or law to conclude that the interest of justice requires a new trial for Dr. Miller.

## IV.  CONCLUSION & ORDERS

Having considered the contentions of Dr. Miller, the record in this case, and the applicable law, I conclude that there is no basis to grant a new trial to Dr. Miller.  The interest of justice does not requires a new trial for Dr. Miller.

**THEREFORE, IT IS ORDERED** that the **Motion for New Trial** [#476] filed November 23, 2015, is denied.

Dated April 12, 2016, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge